EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GARY W. SCHONS
Senior Assistant Attorney General
KEVIN VIENNA
Supervising Deputy Attorney General
ALANA COHEN BUTLER, State Bar No. 200079
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA 92101
P.O. Box 85266
San Diego, CA 92186-5266
Telephone: (619) 645-2534
Fax: (619) 645-2271
Email: Alana.Butler@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FRANK L. RODRIGUEZ,**<br>Petitioner,<br>v.<br>**JAMES TILTON, Secretary, et al.,**<br>Respondent. | 08 CV 0205 IEG (PCL)<br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**<br>Judge: Hon. Peter C. Lewis |

# TABLE OF CONTENTS


| | Page |
|---|---|
| **STATEMENT OF THE CASE** | 1 |
| **STATEMENT OF FACTS** | 2 |
| **I. GROUNDS FOUR, FIVE, AND SIX ARE PROCEDURALLY BARRED** | 5 |
| A. The Bars Imposed By The State Courts On Grounds Four, Five and Six | 5 |
| B. The Clark Bar Is Independent And Adequate Which Precludes This Court From Considering The Merits Of Grounds Four, Five and Six | 5 |
| **II. UNDER THE APPLICABLE STANDARD OF REVIEW, THE STATE COURT DECISIONS DENYING PETITIONER'S CLAIMS ARE ENTITLED TO DEFERENCE** | 7 |
| **III. THE STATE APPELLATE COURT'S DECISION REJECTING PETITIONER'S CLAIM THAT HIS RIGHT TO A FAIR TRIAL WAS VIOLATED WHEN THE TRIAL COURT DISMISSED A JUROR IS ENTITLED TO DEFERENCE** | 8 |
| A. Facts Relating To The Dismissal Of Juror No. 10 | 8 |
| B. The State Appellate Court's Decision | 12 |
| C. The State Court's Decision Rejecting Petitioner's Argument Was Not Contrary To, Or An Unreasonable Application Of, Supreme Court Precedent, Nor An Unreasonable Determination Of Fact | 12 |
| **IV. THE STATE APPELLATE COURT'S FINDING THAT SUBSTANTIAL EVIDENCE SUPPORTED THE CONVICTIONS FOR ATTEMPTED MURDER OF A PEACE OFFICER IS ENTITLED TO DEFERENCE** | 14 |
| A. The State Court's Decision | 14 |
| B. The State Appellate Court's Application Of *Jackson* And Its Determination Of Facts Were Not Objectively Unreasonable | 15 |
| **V. PETITIONER'S CLAIM THAT THE CRIMINALIST'S OPINION WAS INADMISSIBLE AND SHOULD NOT BE CONSIDERED IN CONJUNCTION WITH HIS SUFFICIENCY OF EVIDENCE CLAIM DOES NOT PRESENT A FEDERAL QUESTION, MOREOVER, ANY ERROR IN ADMITTING THE OPINION WAS HARMLESS** | 19 |
| A. Facts Pertaining To Petitioner's Claim | 19 |
| B. State Court Ruling | 20 |
| C. Petitioner Fails To Raise A Federal Question | 20 |

## TABLE OF CONTENTS (continued)

| | | Page |
|---|---|---|
| D. | Even If There Was An Error Pertaining To The Federal Constitution, Any Error Was Harmless | 21 |
| VI. | **THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM THAT HIS SENTENCE VIOLATES THE EIGHTH AMENDMENT BAN ON CRUEL IS ENTITLED TO DEFERENCE** | 21 |
| A. | The State Court Decisions | 21 |
| B. | The State Court Decisions Rejecting This Claim Were Not Objectively Unreasonable | 22 |
| VII. | **PETITIONER'S EX POST FACTO CLAIM IS VAGUE AND CONCLUSORY AND CONSEQUENTLY SHOULD BE SUMMARILY REJECTED, FURTHERMORE THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM FOR LACK OF PARTICULARITY IS ENTITLED TO DEFERENCE** | 23 |
| VIII. | **THE STATE COURT'S DECISION REJECTING PETITIONER'S CLAIMS OF PROSECUTORIAL MISCONDUCT AND SELECTIVE PROSECUTION ARE ENTITLED TO DEFERENCE** | 25 |
| A. | State Court Decisions | 25 |
| B. | The State Court's Rejection Of Petitioner's Prosecutorial Misconduct Claim Is Entitled To Deference | 25 |
| C. | The State Court's Rejection Of Petitioner's Selective Prosecution Claim Is Entitled To Deference | 27 |
| CONCLUSION | | 28 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Beazell v. Ohio*
269 U.S. 167
46 S. Ct. 68
70 L. Ed. 216 (1925) 24

*Bennett v. Mueller*
322 F.3d 573 (9th Cir. 2002 6

*Blackledge v. Allison*
431 U.S. 63
97 S. Ct. 1621
52 L. Ed. 2d 1621 (1977) 24

*Bordenkircher v. Hayes*
434 U.S. 357
98 S. Ct. 663
54 L. Ed. 2d 604 (1978) 27

*Bradshaw v. Richey*
546 U.S. 74
126 S. Ct. 602
163 L. Ed. 2d 407 (2005) 16, 20

*Brady v. Maryland*
373 U.S. 83
83 S. Ct. 1194
10 L. Ed. 2d 215 (1963) 26

*Brecht v. Abrahmson*
507 U.S. 619
113 S. Ct. 1710
123 L. Ed. 2d 353 (1993) 21

*Calder v. Bull*
3 U.S. 386
3 Dall 386
1 L. Ed. 648 (1798) 23

*California Department of Corrections v. Morales*
514 U.S. 499
115 S. Ct. 1597
131 L. Ed. 2d 588 (1995) 24

*Coleman v. Thompson*
501 U.S. 722
111 S. Ct. 2546
115 L. Ed. 2d 640 (1991) 6

## TABLE OF AUTHORITIES (continued)


| | Page |
|---|---|
| *Darden v. Wainwright*<br>477 U.S. 168<br>106 S. Ct. 2464<br>91 L. Ed. 2d 144 (1986) | 26 |
| *Duncan v. Henry*<br>513 U.S. 364<br>115 S. Ct. 887<br>130 L. Ed. 2d 865 (1995) | 21 |
| *Estelle v. McGuire*<br>502 U.S. 62<br>112 S. Ct. 475<br>116 L. Ed. 2d 385 (1991) | 20 |
| *Fields v. Calderon*<br>125 F.3d. 757 (9th Cir. 1997) | 6 |
| *Ford v. Georgia*<br>489 U.S. 411<br>111 S. Ct. 850<br>112 L. Ed. 2d 935 (1991) | 6 |
| *Hendricks v. Vasquez*<br>908 F.2d 490 (9th Cir. 1990) | 24 |
| *In re Clark*<br>5 Cal. 4th 750<br>855 P.2d 729<br>21 Cal. Rptr. 2d 509 (1993) | 5 |
| *In re Duvall*<br>9 Cal. 4th 464<br>37 Cal. Rptr. 2d 259<br>886 P.2d 1252 (1995) | 24, 25 |
| *In re Robbins*<br>18 Cal. 4th 770<br>959 P.2d 311<br>77 Cal. Rptr. 2d 153 (1998) | 6 |
| *In re Swain*<br>34 Cal. 2d 300<br>209 P.2d 793 (1949) | 24, 25 |
| *Jackson v. Virginia*<br>443 U.S. 307<br>99 S. Ct. 2781<br>61 L. Ed. 2d 560 (1979) | 15, 16 |
| *Juan H. v. Allen*<br>408 F.3d 1262 (9th Cir. 2005) | 15 |

## TABLE OF AUTHORITIES (continued)


| | Page |
|---|---|
| *King v. Lamarque*<br>464 F.3d 963 (9th Cir. 2006) | 6 |
| *Lockyer v. Andrade*<br>538 U.S. 63<br>123 S. Ct. 1166<br>155 L. Ed. 2d 144 (2003) | 7, 22, 25 |
| *Miller v. Stagner*<br>757 F.2d 988 (9th Cir. 1985) | 12 |
| *Morgan v. Illinois*<br>504 U.S. 719<br>112 S. Ct. 2222<br>119 L. Ed. 2d 492 (1992) | 12 |
| *Patton v. Yount*<br>467 U.S. 1025<br>104 S. Ct. 2885<br>81 L. Ed. 2d 847 (1984) | 13 |
| *People v. Bland*<br>28 Cal. 4th 313 (2002) | 16, 17 |
| *People v. Chinchilla*<br>(1997) 52 Cal. App. 4th 683 (1997) | 16, 17 |
| *Plascencia v. Alameida*<br>467 F.3d 1190 (9th Cir. 2006) | 23 |
| *Ramirez v. Castro*<br>365 F.3d 755 (9th Cir. 2004) | 22 |
| *Rompilla v. Beard*<br>545 U.S. 374<br>125 S. Ct. 2456<br>162 L. Ed. 2d 360 (2005) | 7 |
| *Rushen v. Spain*<br>464 U.S. 114<br>104 S. Ct. 453<br>78 L. Ed. 2d 267 (1983) | 13 |
| *Schriro v. Landrigan*<br>__ U.S. __<br>127 S. Ct. 1933<br>167 L. Ed. 2d 836 (2007) | 7 |
| *Smith v. Phillips*<br>455 U.S. 209<br>102 S. Ct. 940<br>71 L. Ed. 2d 78 (1982) | 13 |

## TABLE OF AUTHORITIES (continued)


| | Page |
|---|---|
| *Strickler v. Greene*<br>527 U.S. 263<br>119 S. Ct. 1936<br>144 L. Ed. 2d 286 (1999) | 26 |
| *United States v. Batchelder*<br>442 U.S. 114<br>99 S. Ct. 2198<br>60 L. Ed. 2d 755 (1979) | 27 |
| United States v. Goodwin,<br>457 U.S. 368<br>102 S. Ct. 2485<br>73 L. Ed. 2d 74 (1982) | 27 |
| *Wayte v. United States*<br>470 U.S. 598<br>105 S. Ct. 1524<br>84 L. Ed. 2d 574 (1985) | 27 |
| *Yarborough v. Alvarado*<br>541 U.S. 652<br>124 S. Ct. 2140<br>158 L. Ed. 2d 938 (2004) | 7 |
| *Ylst v. Nunnemaker*<br>501 U.S. 797<br>111 S. Ct. 2590<br>115 L. Ed. 2d 706 (1991) | 5, 6, 22 |


**Constitutional Provisions**


| | |
|---|---|
| Sixth Amendment | 8, 12 |
| Eight Amendment | 5, 21 |

# TABLE OF AUTHORITIES (continued)

**Page**

**Statutes**


| | |
|---|---|
| 28 United States Code | |
| § 2254 | 7 |
| § 2254(a) | 20 |
| § 2254(d) | 14 |
| § 2254(e)(1) | 7 |
| California Penal Code | |
| § 187, subdiv. (a) | 16 |
| § 245(d)(2) | 1 |
| § 664 | 1, 16 |
| § 664(e)(1)/187(a) | 1 |
| § 1089 | 12 |
| § 12022.5(a)(1) | 1 |
| § 12022.53 (b) & (c) | 1 |
| California Vehicle Code | |
| § 2800.2(a) | 1 |


**Other Authorities**


| | |
|---|---|
| Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") | 7, 13, 15 |

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GARY W. SCHONS
Senior Assistant Attorney General
KEVIN VIENNA
Supervising Deputy Attorney General
ALANA COHEN BUTLER, State Bar No. 200079
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA 92101
P.O. Box 85266
San Diego, CA 92186-5266
Telephone: (619) 645-2534
Fax: (619) 645-2271
Email: Alana.Butler@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FRANK L. RODRIGUEZ,**<br>Petitioner,<br>v.<br>**JAMES TILTON, Secretary, et al.,**<br>Respondent. | 08 CV 0205 IEG (PCL)<br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**<br>Judge: Hon. Peter C. Lewis |

**STATEMENT OF THE CASE**

In an amended information dated October 4, 2004, the San Diego District Attorney charged petitioner with three counts of attempted murder of a peace officer (Cal. Penal Code §§ 664/664(e)(1)/187(a)), three counts of assault on a peace officer (Cal. Penal Code § 245(d)(2)), and one count of evading an officer with reckless driving (Cal. Veh. Code § 2800.2(a)). The information further alleged numerous firearm allegations. (Penal Code §§ 12022.53 (b) & (c), 12022.5(a)(1).) (Lodgement 1 at CT 8-13.)

///

On October 7, 2004, a jury found petitioner guilty as charged. (Lodgement 1 at CT 198-204.) The trial court sentenced petitioner to three consecutive life terms with the possibility of parole, plus 60 years in state prison. (Lodgement 1 at CT 207-208.)

Petitioner appealed his conviction to the California Court of Appeal. In a reasoned decision, the appellate court affirmed the conviction. (Lodgment 3.) Petitioner then filed a petition for review in the California Supreme Court, which was denied on June 22, 2006. (Lodgments 4, 5.)

Petitioner initiated collateral review in the state courts. On September 12, 2006, he filed a petition for writ of habeas corpus in the San Diego Superior Court, which was denied. (Lodgments 6, 7.) On March 16, 2007, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, which was denied. (Lodgments 8, 9.) Before the previous case was resolved, petitioner filed another petition in the California Court of Appeal, which was denied on the grounds the petition was successive. (Lodgments 10, 11.) Petitioner then filed two different petitions in the California Supreme Court on July 13, 2007. (Lodgments 12, 14.) On December 19, 2007, both petitions were denied, one based upon procedural default. (Lodgments 13, 15.)

On February 1, 2008, Petitioner filed a petition for writ of habeas corpus in the United States District Court, which was denied without prejudice for failure to file the $5.00 filing fee. The Petition was reinstated on April 7, 2008, after Petitioner paid the fee. This Court issued an order requiring a response on April 7, 2008.

## STATEMENT OF FACTS

On June 12, 2003, police were looking for a stolen tan Buick with the license plate number 1LHX685. (Lodgment 2 at RT 23, 28.) Earlier that day, petitioner and his girlfriend, Autumn Reed, were seen in a tan Buick trying to steal another car from an apartment complex in Escondido. (Lodgment 2 at RT 10-11.)

While impounding an unrelated vehicle in the Valley Center area, CHP Officer William Strom saw the tan Buick. (Lodgement 2 at RT 29.) Petitioner drove the car, while Reed was the passenger. (Lodgement 2 at RT 31, 38.) Upon verifying that the car was stolen, Officer Strom

followed the Buick. (Lodgment 2 at RT 29-30.) At the same time, San Diego Sheriff Deputy John Kwiatkowski saw the tan Buick and followed Officer Strom. (Lodgement 2 at RT 61.) Officer Strom activated the lights and sirens on his car. (Lodgement 2 at RT 31.) In response, petitioner quickly accelerated, but then slammed on the breaks. Both officers had to brake hard to avoid a collision. (Lodgement 2 at RT 31-32, 62.)

Petitioner accelerated again to about 80 miles per hour until he approached the intersection of Valley Center Road and Highway 76. He decreased his speed to 60 miles an hour, ran the stop sign, and made a left turn onto eastbound Highway 76. Even though cars were coming from both directions, "amazingly enough" petitioner did not cause a crash. (Lodgement 2 at RT 32-33, 63.)

Once on Highway 76, petitioner continued to speed up to 95 miles per hour. While doing so he engaged in a game of "chicken" with oncoming traffic, that is, he moved into the lanes of oncoming traffic forcing other cars to get out of his way. (Lodgment 2 at RT 33-34.) During the beginning of the pursuit on Highway 76, Deputy Jimmy Vanmiddlesworth joined the chase, following Deputy Kwaitkowski's car. (Lodgement 2 at RT 121.)

At some point, petitioner slowed down, pulled over to the right shoulder, and began to make a U-turn. During that maneuver, Officer Strom saw petitioner stick a rifle outside of his window. Officer Strom swerved onto the right shoulder to avoid being struck. As that happened, Deputy Kwaitkowski saw a gun pointed at him while petitioner turned around and looked out the window. He also swerved to the right and then heard the two gunshots. By that time, petitioner had completed the u-turn and was face to face with Officer Strom. Petitioner pointed the rifle at him. Office Strom sped up to get out of the line of fire, which caused him to careen into a chain link fence. He got out of the car to take cover and disengaged from the pursuit at that point. (Lodgment 2 at RT 35-40, 45, 64, 67.)

Meanwhile, in attempt to stop petitioner during the u-turn and to keep him from shooting Officer Strom, Deputy Kwaitkowski hit petitioner's car. (Lodgement 2 at RT 69-70.) Deputy Vanmiddlesworth collided with petitioner's car as well. The collisions, however, did not disable petitioner's car and he continued along Highway 76, now headed westbound. (Lodgment 2 at RT 72-74, 122.) Deputy Kwaitkowski followed petitioner, who was still being pursued by Deputy

Vanmiddleswoth. (Lodgement 2 at RT 74-75.) Petitioner continued to swerve into oncoming traffic requiring about 20 cars to take evasive action during the chase. (Lodgment 2 at RT 75-76, 124.)

At one point, Deputy Vanmiddlesworth saw petitioner reach into the back seat and saw him holding a rifle. Petitioner stuck the rifle out the window, looked over his shoulder, and pointed the gun behind him at Deputy Vanmiddlesworth. (Lodgement 2 at RT 125-127.) In response, Deputy Vanmiddlesworth swerved to the right. He heard two gunshots as he swerved. (Lodgement 2 at RT 128.) At the same time, Deputy Kwaitkowski could see petitioner pointing the gun in his direction and heard two shots fired. The bullets hit the front bumper of his car.[1] Deputy Kwaitkowski ducked below the dashboard for protection and continued to follow petitioner. (Lodgement 2 at RT 77.)

Petitioner pulled the gun back inside the car. He continued to flee from the officers driving into oncoming traffic and forcing other cars to make evasive actions. Petitioner then turned onto Valley Center Road towards Escondido. (Lodgement 2 at RT 130-131.) Both officers felt it was important to stop petitioner before he entered a more heavily populated area. (Lodgment 2 at RT 81, 131.) To achieve that goal, Deputy Vanmiddlesworth drove up to the driver's side of petitioner's car to try to force him off the road, but was unsuccessful. The maneuver ultimately caused Deputy Vanmiddlesworth to pull ahead of petitioner's car. (Lodgment 2 at RT 82, 132.) In response, petitioner stuck the rifle out the window again towards Deputy Vanmiddlesworth, but could not get a good angle. Instead, petitioner pointed the rifle through his own windshield. (Lodgment 2 at RT 83, 150, 152.) Seeing that Deputy Vanmiddlesworth was in danger, Deputy Kwaitkowski tried to force petitioner off the road. He did so until he was able to hit petitioner's car hard enough so that petitioner lost control of the car and ended up skidding down a driveway where the car came to a rest. (Lodgment 2 at RT 84, 86, 135.)

Petitioner and Reed were taken into custody after that without incident. (Lodgment 2 at RT 88.) In the car on the way to the police station, petitioner and Reed were talkative in a "jovial"

---

1. A criminalist confirmed that the bumper of Deputy Kwaitkowski's car had two bullet holes, one of the holes on the passenger side, the other on the driver's side. (Lodgment No. 2 at RT 78, 232, 234.)

way, as if the whole incident seemed like a joke. Petitioner said he would have shot more rounds, but the gun kept jamming. (Lodgement 2 at RT 276-277.) Two firearms experts testified that the rifle would not fire reliably given the way it had been modified. It would be likely to jam. (Lodgment 2 at RT 119, 252.) Petitioner was later interviewed. He admitted to stealing the car. While being chased by the deputies he tried to turn around and shoot at them. He said he turned back and shot at the sheriffs that were giving chase. He did not know why he did it and that it was stupid. (Lodgment 2 at RT 288-293.)

**I.**

**GROUNDS FOUR, FIVE, AND SIX ARE PROCEDURALLY BARRED**

Respondent asserts Grounds Four, Five, and Six are procedurally barred because the California courts denied these claims with citation to procedural bars which are independent of federal law and adequate. These claims should be denied accordingly.

**A. The Bars Imposed By The State Courts On Grounds Four, Five and Six**

Ground Four, i.e., Petitioner's claim that his sentence violates the Eight Amendment ban on cruel and unusual punishment was denied by the California Court of Appeal with a citation to *In re Clark*, 5 Cal. 4th 750, 765, 855 P.2d 729, 21 Cal. Rptr. 2d 509 (1993). (Lodgment 9.) As it noted in the order, that bar refers to instances where the claim was raised and rejected on direct appeal or should have been raised on direct appeal, the latter of which is applicable here. The California Supreme Court subsequently denied the petition without citation or reference. (Lodgment 13.) Under the look-through doctrine, a silent denial does not intend to change the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991). As such, the California Supreme Court intended to uphold the California Court of Appeal's procedural bar under *Clark*.

Grounds Five and Six are also procedurally barred. These claims pertain to an ex post facto violation, prosecutorial misconduct, and selective prosecution. The California Supreme Court denied these procedurally also with citation to *In re Clark*, 5 Cal. 4th at 750. (Lodgment 15.) As stated earlier, the citation to *Clark* applies to claims that should have been raised on direct appeal.

///

Respondent asserts that these bars are independent of federal law and adequate and the claims should be denied on procedural grounds.

**B. The Clark Bar Is Independent And Adequate Which Precludes This Court From Considering The Merits Of Grounds Four, Five and Six**

If a state court's decision rests on firmly established, independent, and adequate state grounds denying relief, a federal court may not consider habeas corpus relief unless the petitioner can show "cause and prejudice" or that failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 729-732, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). A federal court will presume a state court ruling is independent of federal law unless the state ruling appears to rest primarily on federal law or appears to be interwoven with federal law. *Coleman v. Thompson*, 501 U.S. at 734-35; *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991). California's procedural bars are independent of federal law. *See In re Robbins,* 18 Cal. 4th 770, 811-812 n.32, 959 P.2d 311, 77 Cal. Rptr. 2d 153 (1998).

The issue of adequacy remains. In order to be adequate, the procedural bar must be clear, firmly established, and regularly applied. *Ford v. Georgia*, 489 U.S. 411, 424, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Fields v. Calderon*, 125 F.3d. 757, 760 (9th Cir. 1997). The Ninth Circuit has devised a three-step process under which the adequacy of a procedural bar is analyzed. First, the burden is on the state to allege the adequacy of the bar. *King v. Lamarque*, 464 F.3d 963, 966-967 (9th Cir. 2006); *Bennett v. Mueller*, 322 F.3d 573, 584-585 (9th Cir. 2002.) Respondent specifically alleges that the procedural bars imposed by the state courts with respect to Grounds Four, Five and Six are adequate. Indeed, the procedural barrier preventing a habeas petitioner from raising claims that could have been presented on direct appeal will be applied whenever it appears the bar is applicable, thus demonstrating the adequacy of the bar. *In re Robbins*, 18 Cal. 4th 770, 813 n.34 (1998). In light of that affirmative allegation, the burden shifts to the petitioner who must make specific allegations refuting the adequacy of the state bar. *King v. Lamarque*, 464 F.3d at 967; *Bennett v. Mueller*, 322 F.3d at 584-585. Petitioner has not yet made any specific allegations to refute the bar and cause the burden to shift. If the petitioner meets that burden, the burden shifts back to the state to refute petitioner's claims of inadequacy. *Id.*

Because Respondent has raised the procedural bar as a defense and asserted the independence and adequacy of the bar, the burden now shifts to Petitioner to make specific factual allegations refuting the adequacy of the procedural bars invoked in this case. If Petitioner fails to meet his burden, the procedurally barred claims should be summarily denied.

## II.

## UNDER THE APPLICABLE STANDARD OF REVIEW, THE STATE COURT DECISIONS DENYING PETITIONER'S CLAIMS ARE ENTITLED TO DEFERENCE

The petition was filed under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (herein after AEDPA). Subdivision (d) of that section does not permit a federal court to grant relief unless the petitioner can show that the state court's adjudication on the merits of his claim resulted in a decision that was contrary to, or an unreasonable application of, clearly established Supreme Court case law, or if that adjudication was based upon an unreasonable determination of facts. Under AEDPA, it is insufficient for the state court's decision to be "incorrect" or erroneous; rather, it must be "objectively unreasonable." *Rompilla v. Beard*, 545 U.S. 374, 980, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). Thus, a federal court "cannot grant relief under AEDPA by conducting its own independent inquiry into whether the state court was correct as a *de novo* matter." *Yarborough v. Alvarado*, 541 U.S. 652, 124 S. Ct. 2140, 2150, 158 L. Ed. 2d 938 (2004). Instead, a state court's decision must be "objectively unreasonable" to warrant the grant of habeas relief. *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S. Ct. 1166, 155 L. Ed. 2d 144. AEDPA requires federal habeas courts to presume the correctness of state courts' factual findings unless petitioners rebut this presumption with "clear and convincing evidence." § 2254(e)(1); *Schriro v. Landrigan,* __ U.S. __, 127 S. Ct. 1933, 1939-40, 167 L. Ed. 2d 836 (2007). As will be discussed below, the state courts' decision rejecting Petitioner's various claims are not entitled to relief under these standards.

/ / /

/ / /

/ / /

/ / /

## III.

## THE STATE APPELLATE COURT'S DECISION REJECTING PETITIONER'S CLAIM THAT HIS RIGHT TO A FAIR TRIAL WAS VIOLATED WHEN THE TRIAL COURT DISMISSED A JUROR IS ENTITLED TO DEFERENCE

In Ground One, Petitioner claims that the discharge of Juror No. 10 violated his Sixth Amendment right to a jury trial.[2] (Pet. at 6-10, 19, 21.) This claim was rejected on direct appeal by the California Court of Appeal in a reasoned decision. Because that opinion was not contrary to, or an unreasonable application of, Supreme Court precedent, or an unreasonable determination of fact, it should be deferred to and Petitioner's argument should be rejected.

### A. Facts Relating To The Dismissal Of Juror No. 10

During voir dire, the trial court provided the prospective jurors with questionnaires to answer when called upon. Among the questions posed to the prospective jurors in the questionnaire was whether he or she would have difficulty following the law and whether there was any reason he or she should not sit as a juror. (E.g., Lodgments 1, 2 at Aug. RT 15, 19, 23, Aug. CT 7.)

Prior to questioning, the trial court informed the jurors of the charges in the case and asked whether there was anything about the nature of the charges that would make it difficult to sit as a fair and impartial juror. (Lodgment 2 at Aug. RT 6.) The court also conveyed to the prospective jurors the importance of following the law as it stated and not substitute another notion of what the law should be. (Lodgment 2 at Aug. RT 12.)

Towards the end of the first part of voir dire, the court asked the prospective jurors, "As you sit here has anything else occurred to you or do you think that there is something that we should know about you that would help us make a determination as to whether you can be fair and impartial in our case?" The court also asked, "Do any of you have any deep feelings or beliefs, moral convictions or affiliation with religious group[s] perhaps that would make it hard for you to pass judgment on another person?" (Lodgment 2 at Aug. RT 29.)

---

2. Although Petitioner does not expressly make the Sixth Amendment claim in his federal petition, he did so in his petition for review to the California Supreme Court. Consequently, Respondent will assume he meant to do so here as well.

After the first two sets of jurors were questioned, the court excused a number of jurors for cause and the attorneys exercised peremptory challenges. (Lodgment 2 at Aug. RT 61-63, 80-82.) The trial court addressed the last group of prospective jurors. Juror No. 10 sat within this group.[3] The trial court asked, "Have you all heard the questions that were asked of the other prospective jurors? Did you wish to offer any affirmative responses to any of those questions." There were no responses to the court's inquiry. (Lodgment 2 at Aug. RT 82.)

Juror No. 10 answered the questions contained in the court's written questionnaire. She gave her name and indicated, "I live in Carlsbad. I am single. I work as a[n] operation manager in a research and development department for a footwear manufacturing company."

"I have no children. I have no prior jury experience. I've never been involved with anybody convicted of a crime. My neighbor of two years is Carlsbad PD. My uncle is also PD in San Bernardino. No to number 11, 12 and 13."[4] (Lodgment 2 at Aug. RT 86.)

Towards the end of voir dire, the prosecutor asked the last group, "Is there anybody who would have trouble following the law, even if you disagree with it? I'm not getting responses. Is there anything that's been brought up, up to this point, that you want to volunteer, something to – bring something to mind that you think I ought to know about?" (Lodgment 2 at Aug RT 90.) After a number of peremptory challenges were exercises, the jury was sworn, including Juror No. 10. (Lodgment 2 at Aug. RT 92.)

---

3. The voir dire transcript refers to Juror No. 10 as Prospective Juror No. 15. It is evident that Prospective Juror No. 15 was Juror No. 10 because the defense exercised a peremptory on what was Prospective Juror No. 10, whereby the court asked Prospective Juror No. 15 to take seat number 10. After that the jury was sworn. (Lodgment 2 at Aug. RT 91.) Furthermore, the response given by Prospective Juror No. 15 during voir dire matches the excerpt which the court reporter previously transcribed for the new trial hearing and was labeled "Prospective Juror No. 10." (Lodgment 1 at CT 146.)

4. The context of the other responses to questionnaires leads to the conclusion that Question 11 asked something along the lines of whether the prospective juror would have any difficulty following the law, Question 12 asked whether he or she had been convicted of a felony, and Question 13 asked whether the prospective could see any reason why he or she could not sit on the case. (E.g., Lodgment 2 at Aug. RT 15, 19, 23.) These question numbers do not correspond with the questionnaire provided in the augmented clerk's transcript, which seem to list the same questions under Question Numbers 9, 10, and 11. (Lodgment 1 at Aug. CT 7.)

Shortly after the conclusion of voir dire but before opening arguments, the court received a note from Juror No. 10. (Lodgment 1 at CT 193.) The note read, "I am obligated to inform you that I am becoming uncomfortable with the [sic] my ability to determine the fate of one man[']s life. I would hope to be objective[,] but I am not sure that I could be at this point. I apologize." (Lodgment 1 at CT 20.) The court conferred with counsel in chambers in an unreported conference and then spoke with Juror No. 10 in open court. (Lodgment 1 at CT 193.)

The court asked Juror No. 10 to explain what she meant by the note. She responded that she thought about it overnight. Not having been a juror before, she felt "the burden is the weighing the event to determine, like I said, the fate of, you know, the next 20 years of one person's life say. I don't know that I have the ability to – I'm not confident with my ability to – to do that." (Lodgment 1 at CT 147.)

The trial court explained to Juror No. 10 that she would be instructed not to consider punishment because the jury would not be deciding punishment. It further explained that it is the jury's obligation to determine the facts from the evidence presented at trial and make judgments about those facts. It reassured her that most of her fellow jurors were probably not comfortable with the process because it is a very serious situation and a daunting task. The court then asked whether Juror No. 10 felt she would be incapable of following those instructions. She replied, "I don't know that I'm incapable. I just felt the need to express that to you." She acknowledged that the other jurors may feel the way she did, but felt no need to express it. The court then asked whether she could do her best as her task as a juror. She responded, "I will do my best." (Lodgment 1 at CT 148.)

Defense counsel inquired of Juror No. 10. That examination revealed Juror No. 10's discomfort with deciding someone's fate, as opposed to deciding the facts of the case. Juror No. 10 did not believe that her difficulty deciding someone's fate would affect her ability to listen to all the evidence or determine what occurred. Rather, it just seemed like a lot of responsibility. She indicated that her discomfort would not make it more or less likely to be swayed a certain way because she is a very fair person. Yet, the burden felt uncomfortably huge enough for her to write a note to the judge. (Lodgment 1 at CT 149.)

The prosecutor then spoke to Juror No. 10. The questioning showed that Juror No. 10 would potentially have a hard time determining a person's fact based on penalty. She could not say for sure, it would depend. Juror No. 10 felt a little bit uncomfortable sitting as a juror because it was a heavy weight to sit in judgment of someone. She did not initially think she would feel that way, but the seriousness of the matter changed her mind. Although she wanted to sit on the jury for the experience, she indicated that she would rather not sit if it were up to her. She felt this way because of the gravity of the offense and the potential consequences. She could not say whether the gravity of the case would affect her ability to sit through the case and deliberate, but at that moment she felt it would. (Lodgment 1 at CT 150-151.)

When asked whether the gravity of the case could influence the way she looked at the evidence, Juror No. 10 answered, "I would hope to be objective, as I said. I would – you know, I'm a very fair and honest person. So in listening I would – I would hope that wouldn't influence me, but – and based on the fact that following jury instructions, I would have to follow those. But I would still feel weighted. So yes, to answer– answer your question." The prosecutor sought to clarify her answer by asking, "You feel it would influence the way you view the case by the gravity of the thing?" She answered, "Possibly. Like I said, I don't know. I haven't heard any evidence. I don't know, but it's confusing." She could not rule out the chance that it would affect her at that point. (Lodgment 1 at CT 151.)

The court held a unreported sidebar. (Lodgment 1 at CT 151-152.) Once back on the record, the prosecutor made a motion to excuse Juror No. 10 for cause based on her testimony. Defense counsel objected because Juror No. 10 had not indicated that she could not follow the law and only expressed a concern about the gravity of the case. (Lodgment 1 at CT 152.)

The court excused Juror No. 10, making the following finding. "Her responses today seem to be after obvious reconsideration by her, are different than her responses yesterday. And the court is troubled by her ability to be entirely fair and impartial based on that. She was accepted as a juror in this case based upon her responses yesterday and this new information would suggest she would not be entirely able to be as fair and impartial as she had indicated yesterday." (Lodgment 1 at CT 153.)

After trial, petitioner filed a motion for new trial based upon the trial court's dismissal of Juror No. 10. (Lodgment 1 at CT 139-143.) After hearing argument from counsel and reviewing the transcript of Juror No. 10's examination, the court denied the motion. It stated, "The Court is satisfied that the juror was excused for sufficient cause. She was more than just superficially concerned about the severity of the case. She was concerned about the gravity of the case. She expressed an indication that she did not – she would prefer not to sit.

"The Court was concerned with the different answers that she gave on the two days. And having been sworn, the Court is also convinced that she had given the responses the first day, that she would not have been one of the sworn jurors." (Lodgment 2 at RT 428-429.)

**B. The State Appellate Court's Decision**

Citing to California law, the appellate court found that the trial court did not abuse its discretion when it dismissed Juror No. 10. It reasoned that Juror No. 10 "repeatedly expressed discomfort" about serving on the jury and expressed a preference to be removed. The court also relied upon the fact that Juror No. 10 stated "unequivocally" that she felt that the gravity of the offense and potential consequences to Petitioner would affect her consideration of the evidence and deliberations.

The court concluded that those statements were sufficient to support the trial court's finding that there was good cause to dismiss Juror No. 10, even though she made statements expressing that she would do her best to be fair and unbiased if she remained on the jury. Consequently, the court found that Petitioner's Sixth Amendment rights were not violated. (Lodgment 3 at 4-7.) This issue was presented before the California Supreme Court in a petition for review, which was denied. (Lodgments 4 & 5.)

**C. The State Court's Decision Rejecting Petitioner's Argument Was Not Contrary To, Or An Unreasonable Application Of, Supreme Court Precedent, Nor An Unreasonable Determination Of Fact**

A trial court has the responsibility to remove prospective jurors who will not be able to follow the court's instructions. *Morgan v. Illinois*, 504 U.S. 719, 730, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992). This is consistent with California law, which allows a trial court to dismiss a juror for being unable to discharge his or her duties. Cal. Penal Code § 1089; *Miller v. Stagner*, 757 F.2d

988, 995 (9th Cir. 1985) [finding the manner by which California discharges and replaces jurors do not violate federal constitutional rights.]

The United States Supreme Court has made it clear on numerous occasions that under the mandates of AEDPA, federal courts must give deference to the factual findings of juror misconduct made by state trial courts. The proper application of the presumption of correctness to the trial court's findings of fact on juror testimony permits relief only when the presumption is overcome by convincing evidence. *Smith v. Phillips*, 455 U.S. 209, 218, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). The effects of juror impartiality are questions of historical facts which are entitled to the presumption of correctness. *Rushen v. Spain*, 464 U.S. 114, 120-121, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983). Because those factual determinations are largely based upon credibility and demeanor the trial court's resolution of such questions are entitled to "special deference." *Patton v. Yount*, 467 U.S. 1025, 1031, 1037, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984). Indeed, in light of the presumption of correctness, the trial court's findings could not be overcome even when ambiguity of juror's testimony was present. *Id.* at 1040.

Here, Petitioner has not rebutted the presumption of correctness which must be afforded to the state court's findings. Here, Juror No. 10 directly answered "no" to the court's initial questionnaire asking whether it would be difficult to follow the law and whether there was any reason she could not sit as a juror. (Lodgment 2 at Aug. RT 86.) When the court referred the panel to its previous questions, whether there was something it should know about that would affect its ability to be fair or impartial or whether there were deep feelings or beliefs that would make it hard to pass judgment, Juror No. 10 did not provide an affirmative response. (Lodgment 2 at Aug. RT 29, 82.)

By the next day, however, Juror No. 10 apparently had a change of heart and expressed her discomfort with determining the fate of a man's life. Having thought about her duty overnight, she was no longer confident that she would not be influenced by the gravity of the case. Although she would do her best to follow the court's instruction and not consider punishment she could only go so far as to say, "I don't know that I'm incapable." She explained that she initially did not feel uncomfortable, but the seriousness of the matter changed her mind. While she would have liked the

experience of sitting on a jury, she preferred not to serve. She hoped that she could sit through the case and fairly deliberate, but at that moment felt that the gravity of the case would affect her ability to do so and could not rule out the chance that she would be adversely affected. (Lodgment 1 at CT 147-151.)

In light of those facts, Petitioner has not and cannot overcome the presumption of correctness of the state court's decision. The fact that Juror No. 10 felt strongly enough to alert the court to her issue, preferred not to serve, and could not exclude the possibility that the gravity of the case would affect her deliberations supports the trial court's decision to excuse her from the panel. The trial court's findings that Juror No. 10 could not be fair and impartial is entitled to the presumption of correctness and the state appellate court's decision denying Petitioner's claim should be deferred to under 28 U.S.C. § 2254(d).

## IV.

## THE STATE APPELLATE COURT'S FINDING THAT SUBSTANTIAL EVIDENCE SUPPORTED THE CONVICTIONS FOR ATTEMPTED MURDER OF A PEACE OFFICER IS ENTITLED TO DEFERENCE

In Ground Two, Petitioner asserts that there was insufficient evidence support his convictions for the attempted murder on a peace officer because the evidence did not demonstrate that he specifically intended to kill the officers. (Pet. at 11-13, 19, 21-23.) The state appellate court rejected this argument in a reasoned decision. That decision is entitled to deference because it was not contrary to, or an unreasonable application of, Supreme Court precedent, or an unreasonable determination of fact.

### A. The State Court's Decision

The state appellate found that substantial evidence supported the convictions. First, it found that there was sufficient evidence that Petitioner intended to kill Deputy Vanmiddlesworth and Officer Strom when he fired two shots, in quick succession well within the rifle's firing range towards their cars. It also found that the instance where Petitioner shot at Deputy Vanmiddlesworth and Deputy Kwaitkowski demonstrated intent to kill because when Deputy Vanmiddlesworth swerved to avoid the shots, the bullets ended up striking the bumper of Deputy Kwaitkowski's car.

/ / /

This in combination with Petitioner's statement that he would have fired more shots had the gun not jammed further supported a finding of Petitioner's intent to kill.

The state appellate court rejected Petitioner's theory that he must not have had intent to kill because he did not take all the opportunities that he could have to shoot at Officer Strom and Deputy Kwaitkowski. That point was argued to the jury and was apparently rejected. The court also declined to accept petitioner's argument that insufficient evidence supported his conviction against Deputy Kwaitkowski because he had only fired at Deputy Vanmiddlesworth and Officer Strom. It reasoned that under California law, a defendant who shoots into a group may be found to have acted with the intent to kill everyone in the group. Even though the intent must be evaluated separately for each victim, the evidence was sufficient for the jury to find that petitioner intended to kill each of the officers who were pursuing him, including Officer Kwaitkowski, whose vehicle was actually hit by Petitioner's shots. (Lodgment 3 at 7-10.)

**B. The State Appellate Court's Application Of *Jackson* And Its Determination Of Facts Were Not Objectively Unreasonable**

When analyzing sufficiency of evidence claims under AEDPA, a writ of habeas corpus may not be issued on the grounds of insufficient evidence unless the state courts unreasonably applied the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The standard under *Jackson* inquires whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. The court must analyze the issue by viewing the evidence in the light most favorable to the judgment. *Id.*

The prosecution has no "affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id.* at 326. If the record raises conflicting inferences, the federal court is to presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and should "defer to that resolution." *Id.* The reviewing court is obligated to respect the exclusive province of the fact finder to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts. *Jackson*, 443 U.S. at 319, 324, 326. On federal habeas review, the court will apply the *Jackson* standard with "an additional level of deference." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). It must also be noted that the state court's

interpretation of state law binds a federal court on habeas corpus review. *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604, 163 L. Ed. 2d 407 (2005). As will be discussed in more detail below, the California Court of Appeal's decision is entitled to deference because it applied the principles of *Jackson* and made a reasonable determination of facts based upon the record in light of the applicable law in California.

California law defines attempted murder as the attempting killing of a human being with express malice. Cal. Penal Code §§ 664/187, subdiv. (a). Here, the only element of attempted murder petitioner places at issue was whether petitioner had the requisite intent to kill the three officers. Rarely is there direct evidence of a defendant's intent. Accordingly, intent must typically be inferred from all the circumstances of the attempt, including the defendant's actions. *People v. Chinchilla* (1997) 52 Cal. App. 4th 683, 690 (1997). Here, the state appellate court's decision finding that there was ample evidence to support Petitioner's intent to kill was not objectively unreasonable.

Petitioner made a number of attempts on the lives of three officers, some of which are intertwined with each other. The first attempt involved Officer Strom and Deputy Kwaitkowski when petitioner initiated the u-turn on highway 76. During that attempt, petitioner stuck a rifle out the window and pointed it in Officer Strom's direction. He did so by placing the rifle over his shoulder behind him. Officer Strom responded by swerving to the shoulder and concurrently heard two gunshots being fired. (Lodgment 2 at RT 36, 47, 70.) At the same time, Deputy Kwaitkowski was following behind Officer Strom. When Officer Strom pulled over to the right, Deputy Kwaitkowski saw petitioner pointing the gun in his direction while turning around and looking out the window. The two shots were fired and Deputy Kwaitkowski swerved to avoid them. (Lodgment 2 at RT 64, 67.)

By shooting at the deputies, who were in close proximity to each other, the jury could infer that petitioner intended to kill both officers. Under California law, when there are two victims involved, the defendant's intent must be examined as to each alleged attempted murder victim. *People v. Bland,* 28 Cal. 4th 313, 328 (2002). "Where a single act is alleged to be an attempt on two persons' lives, the intent to kill should be evaluated independently as to each victim . . ." *People v.*

*Chinchilla*, 52 Cal. App. 4th at 688. In fact, the intent to kill two different victims can be inferred even when the defendant fired a single shot at two different victims, both of whom were visible to the defendant. *Id.* at 685, 691.

Along those same lines, California law also permits the jury to find Petitioner guilty on the theory that he created a "kill zone." An individual who shoots at a group of people may be punished for his actions towards everyone in the group, even if he only targeted one person. (*People v. Bland*, 28 Cal. 4th at 329.) Where a defendant creates a "kill zone" to attempt to kill his primary victim, the jury may reasonably infer from the method used an intent to kill others concurrently. (*Id.* at 330) Here, because petitioner had turned around and could see the police cars following him, he created a kill zone when he stuck his rifle out the window behind him and fired shots aimed towards the police cars. Thus, petitioner's first act of firing two shots was sufficient to support the jury's finding that petitioner intended to kill both Officer Strom and Deputy Kwaitkowski.

Additional evidence exists to support the jury's finding that petitioner intended to kill Officer Strom. After the two initial shots were fired at Officer Strom and Deputy Kwaitkowski, petitioner completed a u-turn which placed him face to face at close range with Officer Strom. Officer Strom testified that petitioner pointed the gun right at him causing him to accelerate to get out of the line of fire. (Lodgment 2 at RT 37-40, 43.) The jury heard testimony that the rifle petitioner used had been altered and and would not fire reliably. It was in poor condition and likely to jam. (Lodgment 2 at RT 119, 250-252.) Indeed, petitioner admitted after he was arrested that he would have shot more rounds, but the gun kept jamming. (Lodgment 2 at RT 277.) Because petitioner was in close range to Officer Strom, aimed the rifle at him with a gun that would not reliably shoot, and admitted he tried to shoot more rounds at the officers, the jury could have also concluded that petitioner attempted to kill Officer Strom during that instance.

Likewise, during the second part of the pursuit, it was amply demonstrated that petitioner intended to kill both Deputy Kwaitkowski and Deputy Vanmiddlesworth. During that instance, Deputy Vanmiddlesworth followed directly behind petitioner with Deputy Kwaitkowski behind him. Deputy Vanmiddlesworth saw petitioner look over his shoulder and point the gun at him. He swerved to the right and heard two shots fired at that same time. (Lodgment 2 at RT 128.)

Meanwhile, Deputy Kwaitkowski saw Deputy Vanmiddlesworth veer to the right while petitioner stuck the gun out of the window in his direction. Both shots hit the front of his car causing him to move below the dash board for protection. (Lodgment 2 at RT 77.)

Very similar to the incident involving Officer Strom and Deputy Kwaitkowski, petitioner looked back, saw both officers following him, aimed, and shot the gun at them. This time his aim was sufficient to make contact with Deputy Kwaitkowski's car. Because the two officers were in such close proximity to each other and petitioner effectively created a "kill zone" by aiming and shooting behind him at his pursuers the jury had substantial evidence to find that he intended to kill both Deputy Kwaitkowski and Deputy Vanmiddlesworth.

The last attempted murder incident could have occurred after Deputy Vanmiddlesworth pulled out ahead of petitioner after unsuccessfully trying to push him off the road. During that incident, petitioner pointed the gun directly in front of him through his windshield at Deputy Vanmidlesworth. (Lodgment 2 at RT 83-84, 150.) This is another instance where the jury could have inferred that petitioner tried to shoot the rifle, but was unable to do so because of its poor condition. This in conjunction with petitioner's admission that he would have fired more shots supported the jury's conclusion.

Finally, and importantly, the jury had before it additional admissions in assessing whether petitioner intended to kill the officers. Upon being interviewed, petitioner admitted that he turned around and started shooting at the "sheriffs" that were giving chase. This shows the object of his intent to kill was not one officer, but rather anyone who followed him. (Lodgment 2 at RT 289.) His admissions in conjunction with his acts of shooting at the deputies provide substantial evidence to support the convictions. In sum, the state appellate court's finding that sufficient evidence supported the conviction was a reasonable determination of fact and was not contrary to, or an unreasonable application of, Supreme Court precedent.

///

///

///

///

V.

**PETITIONER'S CLAIM THAT THE CRIMINALIST'S OPINION WAS INADMISSIBLE AND SHOULD NOT BE CONSIDERED IN CONJUNCTION WITH HIS SUFFICIENCY OF EVIDENCE CLAIM DOES NOT PRESENT A FEDERAL QUESTION, MOREOVER, ANY ERROR IN ADMITTING THE OPINION WAS HARMLESS**

Petitioner contends that the trial court erred when it allowed the criminalist, Lance Martini, to testify as to his intent. (Pet. at 14-15, 19, 23-24.) In making this claim, Petitioner fails to raise a federal question and the claim should be denied on those grounds. In any event, even if some federal violation could be construed from his claim, any error in the admission of Martini's opinion was harmless.

**A. Facts Pertaining To Petitioner's Claim**

Here, the prosecutor asked a hypothetical question of the criminalist, Lance Martini, regarding what inferences could be drawn about the actions of a shooter who, while driving, placed a gun over his left shoulder, looked backwards and discharged two rounds into the bumper of the car in back of him. Defense counsel objected on the grounds that the opinion called for "an ultimate conclusion." The court responded, "It's hard to know. I'll – I'll permit it. Overruled. You may answer." (Lodgment 2 at RT 259.) The prosecutor then added, "Without regard to the legal conclusions, what can you interpret about the physical actions of the shooter?" Martini then asked a number of questions to clarify the hypothetical. (Lodgment 2 at RT 260.)

After that clarification, Martini answered,

> Two shots being fired and two shots striking the target vehicle, I would say is pretty good shooting. At that distance, 40, 50, 60 feet that's relatively close range for a rifle-type firearm. This would not necessarily be an easy shooting situation for the shooter. You have the conditions of driving while shooting, which require several activities occurring simultaneously. Certainly not impossible, certainly can be done with a reasonable amount of accuracy. So the ability of the shooter in the lead vehicle to fire two shots, strike the target vehicle twice is very representative of some – some good shooting, number one,

as well as an intent to strike that target vehicle or at least the target vehicle/driver combination.

(Lodgment 2 at RT 260-261.)

**B. State Court Ruling**

Although this issue was raised on direct appeal, it was not specifically addressed by the appellate court, although in keeping with Petitioner's claim, it did not consider the testimony of the criminalist in assessing whether sufficient evidence supported the conviction. (Lodgment 3.) The issue was presented in the petition for review, which was denied. (Lodgment 4.) Petitioner raised the issue again in his petitions for writ of habeas corpus to the San Diego Superior Court, California Court of Appeal, and the California Supreme Court. (Lodgments 6, 8, 12.) The Superior Court and the Court of Appeal found that the issue was procedurally barred, but nevertheless held that Petitioner failed to make a prima facie showing entitling him to relief on the claims.[5] (Lodgments 7, 9.) The issue was presented to the California Supreme Court as well, which was denied in a silent denial. (Lodgment 13.)

**C. Petitioner Fails To Raise A Federal Question**

Federal habeas corpus relief is available only on behalf of a person in custody in violation of federal law. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). A state court's interpretation of state law binds a federal court reviewing on habeas corpus. *Bradshaw v. Richey*, 546 U.S. at 76. Federal habeas corpus review does not ordinarily lie to review questions about the admissibility of evidence. *Estelle v. McGuire*, 502 U.S. at 67-68.

Here, the petition for review filed in the California Supreme Court does not cite a violation of federal law in conjunction with the issue of the criminalist's testimony. (Lodgment 4 at 27-29.) Likewise, the petitions filed in the state courts fail to raise a federal question in conjunction with this claim. (Lodgments 6, 8, 12) Moreover, no violation of the federal constitution is readily apparent from reading the testimony of which Petitioner complains. And most importantly, the Petition filed

---

5. Respondent is not raising a procedural bar defense as to this claim. As noted, this claim was raised on direct appeal, but was not explicitly addressed by the Court of Appeal. Thus any bar asserting that the claim should have been made on direct appeal is inapplicable, since it was.

with this Court neglects to allege any error of federal or Constitutional law and only cites to state law. (Pet. at 14-15, 19, 23-24.) Because Petitioner has not presented a federal question to the state courts or to this Court, his claim should be denied as such.

### D. Even If There Was An Error Pertaining To The Federal Constitution, Any Error Was Harmless

A petitioner is only prejudiced by trial errors on federal habeas corpus review if the error had a "substantial and injurious effect" on the judgment. *Brecht v. Abrahmson*, 507 U.S. 619, 632-633, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). In other words, the inquiry is whether it is more probable than not that the error affected the outcome. *Duncan v. Henry*, 513 U.S. 364, 370, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995). Here, the testimony of the criminalist, even if in error, did not have a substantial or injurious effect on the verdict. Indeed, the California Court of Appeal did not rely upon the criminalist testimony in concluding that substantial evidence supported the conviction. It would be unnecessary to do so in light of the first hand accounts of the officers engaged in the pursuit, the evidence of the bullets successfully hitting Kwaitkowski's car, and Petitioner's incriminating statements after his capture. Thus, had any error of a federal constitutional nature occurred, it was plainly harmless.

## VI.

## THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM THAT HIS SENTENCE VIOLATES THE EIGHTH AMENDMENT BAN ON CRUEL IS ENTITLED TO DEFERENCE

In Ground Four, Petitioner asserts that his sentence is grossly disproportionate to the crimes he committed in violation of the Eight Amendment proscription on cruel and unusual punishment. (Pet. at 16, 19, 24.) As noted earlier, this claim is procedurally barred. Moreover, the state court's rejection of this claim was not contrary to, or unreasonable application of Supreme Court precedent, or an unreasonable determination of fact. Thus, that decision should be given deference and the claim should be rejected.

### A. The State Court Decisions

Petitioner raised this issue in his petitions for writ of habeas corpus in the San Diego Superior Court, the California Court of Appeal, and the California Supreme Court. (Lodgments 6,

8, 12.) As discussed previously, both the San Diego Superior Court and the California Court of Appeal found that this was procedurally barred because it could have been raised on direct appeal, but was not. Those courts likewise found that Petitioner had not made a prima facie showing entitling him to relief. (Lodgments 7, 9.) The California Supreme Court issued a silent denial on the issue. (Lodgement 13.) Under the look-through doctrine, a silent denial does not intend to change the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. at 803. As will be discussed below, the rejection of this claim on the merits, was not contrary to, or an unreasonable application of, Supreme Court precedent, nor an unreasonable determination of facts.

**B. The State Court Decisions Rejecting This Claim Were Not Objectively Unreasonable**

A sentence violates the Eighth Amendment if it is grossly disproportionate to the crimes committed. *Lockyer v. Andrade,* 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). It is only in an "extremely rare" case that the defendant's sentence, weighed against the gravity of his offense and his criminal history, will give rise to an inference of gross disproportionality. *Ramirez v. Castro,* 365 F.3d 755, 770 (9th Cir. 2004).

Here, Petitioner engaged in a high speed chase where he demonstrated a complete disregard for the other motorists on the road. During the chase, he fired a rifle at the pursuing officers on at least two occasions. Arguably, Petitioner tried to fire more often, but was prevented from doing so because the rifle malfunctioned. The second time he fired shots, he successfully struck one of the officer's vehicles. His statements following the pursuit likewise demonstrate his cavalier attitude by stating he would have fired more had his gun not jammed.

Although Petitioner was not sentenced under any recidivist statute, his criminal history is long and troubling. Petitioner was placed in the California Youth Authority from the ages of 15 to 21 years old after a juvenile court made true findings that he conspired to murder his teacher's husband and then stabbed him to death. (Lodgment 1 at CT 161.) Petitioner also amassed convictions for driving under the influence, false identification to a peace officer, receiving a stolen vehicle, and auto theft. (Lodgment 1 at CT 162-163.)

///

In light of the gravity of the offenses and Petitioner's criminal history, it cannot be said that Petitioner's sentence amounts to one of the extremely rare occasions where a sentence is found to be grossly disproportionate to the crimes committed. *Plascencia v. Alameida*, 467 F.3d 1190, 1204 (9th Cir. 2006). Rather, he was fairly punished for attempting to take the lives of three peace officers, using a firearm in his attempts to do so, in addition to evading arrest in such a dangerous manner. That being the case, it cannot be said that the state courts' rejection of this claim was contrary to, or an unreasonable application of, Supreme Court precedent, or an unreasonable determination of facts.

## VII.

## PETITIONER'S EX POST FACTO CLAIM IS VAGUE AND CONCLUSORY AND CONSEQUENTLY SHOULD BE SUMMARILY REJECTED, FURTHERMORE THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM FOR LACK OF PARTICULARITY IS ENTITLED TO DEFERENCE

In Five, Petitioner asserts that he was deprived of a defense available at the time the crimes were committed and sentenced under incorrect sentencing guidelines in violation of ex post facto principles. (Pet. at 17, 19, 24-50.) His allegations are vague and conclusory and should be summarily dismissed as such. Moreover, the state court's rejection of this claim should be deferred to because it was not objectively unreasonable.

As discussed previously, this claim is procedurally barred. Moreover, the claim as presented to this Court is vague and conclusory warranting the summary denial of Petitioner's argument. As a starting point, it should be noted that there are four categories of ex post facto violations, which were formulated more than two hundred years ago. Those four categories are: 1) a law that makes an action criminal that was not criminal when done; 2) a law that aggravates a crime or makes it greater than when it was committed; 3) a law that increases the punishment for a crime after it was committed; and 4) a law that alters the legal rules of evidence and requires less or different evidence to convict the offender of a crime than the law required at the time the crime was committed. *Calder v. Bull*, 3 U.S. 386, 3 Dall 386, 1 L. Ed. 648 (1798). In other words,

> [A]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for

> a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

*Beazell v. Ohio*, 269 U.S. 167, 46 S. Ct. 68, 70 L. Ed. 216 (1925).

Although Petitioner references an increase in punishment and the deprivation of a defense, he neglects to specify what law was retroactively applied to increase his punishment or prevent him from presenting a defense.[6] The hallmark feature of an ex post facto violation is retroactivity. *E.g.*, *California Department of Corrections v. Morales*, 514 U.S. 499, 504, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995). Petitioner's failure to specify which law was applied retroactively is fatal to his ex post facto claim and renders the claim vague and conclusory. That being the case, this Court should summarily deny the claim. *See Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 1621 (1977); *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990).

Even if this Court is not inclined to deny the claim on those grounds, the state court's denial of Petitioner's ex post facto argument is entitled to deference. The petition containing this ground was rejected by the California Supreme Court with citation to *In re Swain*, 34 Cal. 2d 300, 304, 209 P.2d 793 (1949), and *In re Duvall*, 9 Cal. 4th 464, 474, 37 Cal. Rptr. 2d 259, 886 P.2d 1252 (1995). (Lodgment 15.) A citation to *In re Swain* indicates that the petitioner failed to allege facts with sufficient particularity to warrant issuance of the writ. *Swain*, 9 Cal.3d at 304. A citation to *In re Duvall* likewise indicates that the petitioner failed to plead facts with sufficient particularity, and also failed to provide documentary evidence to support his claim. *In re Duvall*, 9 Cal. 4th at 474. Those citations should be viewed as merits determinations finding that Petitioner failed to

---

6. To the extent that one might construe the pleading to assert that ex post facto principles were violated because the trial court failed to instruct on lesser included offenses sua sponte, again, the pleading is deficient. Petitioner fails to plead what law was applied retroactively, how this fits within the four categories of violations, or even what the court should have instructed the jury with.

Along those same lines, it should be also noted that Petitioner seems to copy pages upon pages of headnotes and case law. Its is not apparent what he seeks to accomplish by doing so. While Respondent is willing to liberally construe a pro se petitioner's claims, as he has done throughout the Answer, he will not create issues for Petitioner based upon handwritten case law when no corresponding claim is apparent from his allegations or prior pleadings.

adequately set forth and substantiate his claims. That finding is entitled to deference because the wholly deficient pleading Petitioner provided to the California Supreme Court was worthy of such a citation and it cannot be said that the rejection on those grounds was "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. at 75.

## VIII.

## THE STATE COURT'S DECISION REJECTING PETITIONER'S CLAIMS OF PROSECUTORIAL MISCONDUCT AND SELECTIVE PROSECUTION ARE ENTITLED TO DEFERENCE

In Ground Six, Petitioner claims that the prosecutor committed misconduct when he misstated evidence and engaged in selective prosecution. (Pet. at 18, 19, 51, 53.) As stated previously, these claims are procedurally barred. In any event, the state court's rejection of these claims are entitled to deference because they were not contrary to, or an unreasonable application of, Supreme Court precedent, or an unreasonable determination of fact.

### A. State Court Decisions

The petition containing this ground was rejected by the California Supreme Court with citation to *In re Swain*, 34 Cal. 2d at 304 and *In re Duvall*, 9 Cal. 4th at 474. (Lodgment 15.) As noted previously, these citations indicate that Petitioner failed to allege facts with sufficient particularity and without evidence to support his claim. These citations should be construed as merits determinations finding that Petitioner failed to adequately set forth and substantiate his claims, as he has likewise failed to do here.

### B. The State Court's Rejection Of Petitioner's Prosecutorial Misconduct Claim Is Entitled To Deference

Although it is quite unclear from the Petition, Respondent construes this claim to mean that the prosecution either withheld toxicology reports or other evidence that Petitioner was under the influence at the time of the offenses or that the prosecution should have presented this evidence at trial. (Pet. at 16, 51.) Under either theory, the state court's rejection of the claim was not objectively unreasonable.

/ / /

/ / /

The suppression by the prosecution of exculpatory evidence violates due process when the evidence is material either to guilt of punishment, irrespective of good faith of the prosecutor. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). There are three components to a Brady violation: 1) favorable evidence that was exculpatory or impeaching, 2) was suppressed by the state, and 3) with resulting prejudice. *Strickler v. Greene*, 527 U.S. 263, 281-282, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). None of these three components have been shown here.

An exhibit included within one of Petitioner's state court petition reveals that a drug recognition expert assessed Petitioner after the offenses to see if he was under the influence. The drug recognition expert said that he was not under the influence, thus that information could not have negated Petitioner's mental state, even assuming that was a defense. (Lodgment 6 at Ex. B.) That same report also reveals that two glass pipes were recovered as evidence. (Lodgment 6 at Ex. B.) The glass pipes were eventually tested and a residue of methamphetamine was found on the pipes. (Lodgment 6 at Ex. B.) Petitioner fails to explain how these items were exculpatory, whether they were in fact suppressed by the prosecution (an unlikely scenario since the information is contained in police reports), and how that suppression of that evidence resulted in prejudice. In light of the information contained in the report and Petitioner's failure to adequately, if at all, develop his claim, the state court's rejection of that claim was not objectively unreasonable.

To the extent that Petitioner may claim that the prosecution misrepresented something about his drug use during the offenses, or lack thereof, this claim is likewise wholly lacking. Prosecutorial misconduct is reversible under federal law when a prosecutor's pattern of misconduct "infects the trial with such unfairness as to make the conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986). Petitioner cites nary a page from the record or a specific instance where the prosecutor misrepresented any fact or can point to any act on behalf of the prosecutor that infected the trial with unfairness. Also, the prosecution was under no obligation to raise a defense on behalf of petition or introduce all the evidence obtained in the course of the investigation. The dearth of any articulable fact to support his claim compels the conclusion that the state court's rejection of his argument was not objectively unreasonable.

### C. The State Court's Rejection Of Petitioner's Selective Prosecution Claim Is Entitled To Deference

Petitioner also broadly asserts that the prosecutor engaged in selective prosecution. (Pet. at 18.) A prosecutorial agency retains "broad discretion" as to whom to prosecute. *United States v. Goodwin,* 457 U.S. 368, 380, n.11, 102 S. Ct. 2485, 2492, n.11, 73 L. Ed. 2d 74 (1982). As long as a prosecutor has probable cause to believe that a defendant committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file, generally rests entirely in his discretion. *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S. Ct. 663, 668, 54 L. Ed. 2d 604 (1978).

Although prosecutorial discretion is broad, it is not unfettered. *Wayte v. United States*, 470 U.S. 598, 607-610, 105 S. Ct. 1524, 84 L. Ed. 2d 574 (1985). The selective enforcement of criminal law is subject to constitutional constraints. *United States v. Batchelder,* 442 U.S. 114, 125, 99 S. Ct. 2198, 2205, 60 L. Ed. 2d 755 (1979). Specifically, the decision to prosecute may not be "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'' *Bordenkircher v. Hayes,* 434 U.S. at 364. An arbitrary classification includes the exercise of protected statutory and constitutional rights. *See United States v. Goodwin,* 457 U.S. at 372.

Selective prosecution claims are analyzed equal protection standards. *Wayte v. United States*, 470 U.S. at 608. These standards require that petitioner to show both that the passive enforcement system had a discriminatory effect and that it was motivated by a discriminatory purpose. *Id.* at 608. The state courts' decisions to reject Petitioner's selective prosecution claims were not objectively unreasonable under Supreme Court authority.

Here, Petitioner essentially re-argues his sufficiency claim by stating that the prosecution was selective because there were less than three counts of attempted murder, he was only trying to escape, he fired randomly and not to kill, and he was paranoid at the time due to methamphetamine use. (Pet. at 18.) However, Petitioner has made no showing that the prosecution was based upon any unjustifiable standard. Indeed, the fact that a jury of twelve unanimously agreed that Petitioner committed the crimes, the California Court of Appeal found that substantial evidence supported the

conviction, and the California Supreme Court declined to review the matter, unequivocally demonstrates that the decision to charge rested firmly upon the evidence against Petitioner, not any unjustifiable standard. Accordingly, the state court's rejection of this claim was not objectively unreasonable.

## CONCLUSION

For the reasons above stated, Respondent respectfully requests that the Court dismiss the petition with prejudice and deny any request for a certificate of appealability.

Dated: June 9, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GARY W. SCHONS
Senior Assistant Attorney General
KEVIN VIENNA
Supervising Deputy Attorney General

s/Alana Cohen Butler

ALANA COHEN BUTLER
Deputy Attorney General
Attorneys for Respondent

ACB:adc
80246325.wpd

## CERTIFICATE OF SERVICE BY U.S. MAIL

Case Name: **Rodriguez v. Tilton**
No.: **08 CV 0205 IEG (PCL)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On June 9, 2008, I served the following documents:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA 92186-5266, addressed as follows:

## Electronic Mail Notice List

I have caused the above-mentioned document(s) to be electronically served on the following person(s), who are currently on the list to receive e-mail notices for this case:

n/a

## Manual Notice List

The following are those who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing):

Frank L. Rodriguez
CDC# V-63358
High Desert State Prison
Facility A
P.O. Box 3030
Susanville, CA 96127
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 9, 2008, at San Diego, California.

| A. Curiel | [signature] |
|---|---|
| Declarant | Signature |

SD2008800899
80247386.wpd